# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| PIONEER HOTEL GROUP, INC., an Idaho corporation; and PINAL DOSHI, an individual,<br><br>        Plaintiffs,<br><br>        vs.<br><br>CHOICE HOTELS INTERNATIONAL, INC., a Delaware corporation,<br><br>        Defendant. | Case No.: 1:23-cv-00173-REP<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 47)**<br><br>**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Dkt. 50)**<br><br>**PLAINTIFFS' MOTION TO STRIKE DAVID MAGNANI DECLARATION (Dkt. 57)** |

Pending before the Court are three interrelated motions: (i) Defendant's Motion for Summary Judgment (Dkt. 47); (ii) Plaintiffs' Motion for Summary Judgment (Dkt. 50); and (iii) Plaintiffs' Motion to Strike David Magnani Declaration (Dkt. 57). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal arguments are adequately presented and that oral argument would not significantly aid the decisional process. *See* Dist. of Idaho Loc. Civ. R. 7.1(d)(1)(B). Because there are genuine disputes of material fact central to this action, the parties' cross-motions for summary judgment are denied. Additionally, in light of the disposition of the parties' cross-motions for summary judgment, the Court denies Plaintiffs' Motion to Strike without prejudice. The Court explains these rulings below.

## I. BACKGROUND

The central issue in this case is whether Plaintiff Hotel Group, Inc. ("Pioneer"), acting through one of its owners, Mita Vaghashia, entered into a franchise agreement with Defendant Choice Hotels International, Inc. ("Choice Hotels") for the operation of a hotel in Sandpoint,

**MEMORANDUM DECISION AND ORDER - 1**

Idaho.  The existence and enforceability of that alleged franchise agreement determine whether Pioneer and its principals may be required to arbitrate a dispute concerning franchise-related fees and obligations.  Plaintiffs contend that no franchise agreement was ever executed and that any documents purporting to reflect such an agreement were forged.  Choice Hotels, by contrast, maintains that Ms. Vaghashia validly executed the agreement on Pioneer's behalf and that Pioneer later confirmed that relationship through its conduct.

## A.    Factual Background

In 2018, Plaintiff Pinal Doshi and Ms. Vaghashia formed Pioneer Hotel Group, Inc., an Idaho corporation.  Shortly thereafter, Pioneer acquired a hotel property located at 807 North Fifth Avenue in Sandpoint, Idaho.  The property had previously operated for many years as a Quality Inn franchise affiliated with Choice Hotels.

According to Plaintiffs, Mr. Doshi initially considered operating the hotel as a Choice Hotels brand during the summer of 2018, but ultimately decided not to.  *See* Doshi Decl. at ¶ 4 (Dkt. 52-3).  Instead, Plaintiffs claims that the hotel was operated as an unbranded independent hotel, which it was until becoming America's Best Value Inn in 2022.  *Id*.  America's Best Value Inn is not a Choice Hotels brand.

Choice Hotels paints a much different picture.  It asserts that, prior to closing on the purchase, Pioneer filed an assumed business name allowing the property to operate under the "Quality Inn" designation.  *See* Def.'s SOF No. 4 (Dkt. 49).  According to Choice Hotels, (i) that transaction also included a $50,000 escrow holdback tied to licensing requirements associated with the continued operation of the property as a franchised hotel under the Quality Inn brand; and (ii) after acquiring the property, Pioneer submitted a relicensing application to Choice Hotels identifying Ms. Vaghashia as the principal contact for franchise communications and Mr. Doshi as another contact.  *See id*. at Nos. 3 & 7.

**MEMORANDUM DECISION AND ORDER - 2**

Choice Hotels contends that, as part of the relicensing process, it transmitted a franchise agreement and personal guaranty to Pioneer (based on the email addresses provided on the relicensing application) through the DocuSign electronic signature platform in December 2018. *See id*. at No. 9.  It then states that, on December 28, 2018, Ms. Vaghashia executed those documents electronically on behalf of Pioneer via DocuSign.  *See id*. at Nos. 10-11.  Choice Hotels further asserts that Pioneer contemporaneously paid a $20,000 franchise deposit from a Pioneer bank account, and later accepted a $20,000 incentive payment from Choice Hotels related to the franchise relationship.  *See id*. at Nos. 12-13.

By 2019, says Choice Hotels, Pioneer was operating the hotel property under the Quality Inn name and brand, holding itself out to the public as a Choice Hotels franchisee.  *See id*. at No. 16.  As further evidence of this, Choice Hotels points to a situation in August 2019 when, after falling behind on its obligations, Ms. Vaghashia issued at $10,000 check from a Pioneer account, with an account name "Pioneer Hotel Group, Inc. DBA Quality Inn," specifically referencing the franchise agreement by its unique contract number, 0000035172.  *See id*. at No. 14.

Pioneer and Mr. Doshi dispute these assertions.  They maintain that Ms. Vaghashia never executed the franchise agreement or any guaranty and never authorized anyone to do so on Pioneer's behalf.  *See* Pls.' Opp. to MSJ at 5-6 (Dkt. 52) (citing Vaghashia Dep. at 21:20-22:12, 27:10-28:19 (Dkt. 51-1)).  Plaintiffs further contend that forensic analysis of the relevant DocuSign records suggest that the documents were not only executed from a device located at a different geographic location from Ms. Vaghashia at the time of signing, but were actually forged by a Choice Hotels employee without her knowledge  *Id*. at 6-8 (citing Ex. B to Wieland Decl. at ¶¶ 44-52 (Dkt. 50-2)).  Plaintiffs therefore deny that Pioneer ever entered into a franchise relationship with Choice Hotels or operated the Sandpoint property as a Choice Hotels franchise at any time.

**MEMORANDUM DECISION AND ORDER - 3**

B.        **The Complaint and Procedural Background**

The dispute between the parties came to a head in December 2022 when Choice Hotels initiated arbitration proceedings before the American Arbitration Association ("AAA").  In its arbitration demand, Choice Hotels alleged that Pioneer and its principals breached the franchise agreement governing the hotel property and sought more than $229,000 in damages, including unpaid fees, interest, and termination damages.  *See* Compl. at ¶ 8 (Dkt. 1-1).

Choice Hotels claimed that the franchise agreement dictated a dispute resolution procedure that involved arbitration.  Plaintiffs, however, disputed that they ever entered into a franchise agreement with Choice Hotels.  To that end, on March 10, 2023, Plaintiffs appeared in the arbitration proceedings and filed an Objection to Jurisdiction and Motion to Dismiss, stating:

> Choice Hotels International, Inc. ("Choice Hotels") has brought a claim for breach of a franchise agreement against Pioneer and Doshi (collectively "Respondents").  Choice Hotels provided two pages of this lengthy agreement, claiming that it contains an arbitration clause binding on Respondents.  *Pioneer has no record of the franchise agreement and Doshi is positive he never signed it.* Neither of the Respondents operates a Choice Hotel branded hotel. Pioneer operates a single hotel through a competing franchisor; Doshi is a doctor who lives in California and has never run a hotel in his life.  *Since there is no evidence of an enforceable arbitration agreement between Respondents and Choice Hotels, this dispute is not arbitrable and the AAA lacks jurisdiction.*

*See* Ex. 5 to Lloyd Decl. (Dkt. 8-5) (emphasis added).

That same day, Plaintiffs filed the instant action in Idaho state court.  *See* Compl. (Dkt. 1-1).  Plaintiffs' Complaint alleges that they never entered into a franchise agreement with Choice Hotels and, thus, cannot be compelled to arbitrate based upon a non-existent agreement.  *See id*. at ¶¶ 1, 9-10.  In turn, Plaintiffs' Complaint asserts two claims for relief relevant to the present motions.  First, Plaintiffs seek injunctive relief preventing Choice Hotels from pursuing arbitration on the ground that Plaintiffs never agreed to arbitrate any disputes with Choice

**MEMORANDUM DECISION AND ORDER - 4**

Hotels. *See id*. at ¶¶ 14-18. Second, Plaintiffs seek declaratory relief establishing that no enforceable franchise agreement exists and that Plaintiffs therefore owe no contractual obligations to Choice Hotels. *See id*. at ¶¶ 18-21.

Choice Hotels removed the action to this Court based on diversity jurisdiction. *See* Not. of Removal (Dkt. 1). Soon after, it filed a Motion to Dismiss, arguing that Plaintiffs' claims should be dismissed on the grounds of improper venue because the parties' franchise agreement expressly requires that Plaintiffs' claims be resolved in arbitration before the AAA. *See* Def.'s MTD at 1 (Dkt. 6); Def.'s Mem. ISO MTD at 3-5 (Dkt. 7). Plaintiffs predictably disagreed. *See generally* Pls.' Opp. to MTD (Dkt. 10). On October 30, 2023, the Court denied the motion given the uncertainty surrounding the existence of a franchise agreement between Plaintiffs and Choice Hotels, reasoning:

> The parties' positions highlight a stark dispute of fact: namely, whether an agreement exists between the parties that compels arbitrating disputes. This issue is for the Court to resolve upfront. At this stage, construing as it must the contested facts and resolving all reasonable inferences in Plaintiffs' favor, the Court is not able to conclude as a matter of law that the parties entered into the franchise agreement and guaranty, or otherwise agreed to arbitrate. The discovery process attendant to Plaintiffs' claims will undoubtedly shed more light on the subject and help dictate the course of proceedings. Until then, Defendant's Motion to Dismiss is denied.

10/30/23 MDO at 4-5 (Dkt. 15). The arbitration proceedings have since been effectively held in abeyance pending resolution of the threshold question presented here: whether a binding franchise agreement exists between the parties.

## C.    The Parties' Cross Motions for Summary Judgment

Discovery did not resolve the parties' impasse. Instead, following discovery, both sides moved for summary judgment. Although the motions seek opposite outcomes, they address

**MEMORANDUM DECISION AND ORDER - 5**

many of the same factual and legal issues.  In particular, they address the existence and enforceability of the alleged franchise agreement.

Choice Hotels moves for summary judgment on the ground that the undisputed evidence shows that Ms. Vaghashia executed the franchise agreement and guaranty on Pioneer's behalf. *See* Def.'s Mem. ISO MSJ at 3-4, 6-7 (Dkt. 48).  It argues that she possessed actual authority to bind Pioneer or, at minimum, apparent authority based on Pioneer's conduct and representations. *See id*. at 7-11.  Choice Hotels further argues that even if Ms. Vaghashia's authority were disputed, Pioneer ratified the agreement by accepting franchise-related payments and operating the property under the Choice Hotels brand.  *See id*. at 11-13.

Plaintiffs move for summary judgment on a different theory.  While they dispute that Ms. Vaghashia ever executed the franchise agreement or guaranty, their motion centers on a narrower issue: Choice Hotels' alleged failure to provide a franchise disclosure document ("FDD") as required by federal franchise regulations.  *See* Pls.' Mem. ISO MSJ at 1-6 (Dkt. 50-1).  Plaintiffs contend that this failure renders any purported franchise agreement between Pioneer and Choice Hotels void and unenforceable as a matter of law.  *See id*. at 6-8.

Although framed differently, the parties' motions present overlapping issues concerning the formation and enforceability of the alleged franchise agreement.  Resolution of both motions requires the Court to examine the same core factual circumstances surrounding the alleged execution of the franchise agreement, including the parties' subsequent conduct, as well as the applicability of federal franchise disclosure requirements.

## II.  <u>LEGAL STANDARD</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court's role at summary judgment is not "to weigh the evidence and determine the

**MEMORANDUM DECISION AND ORDER - 6**

truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). The court does not make credibility determinations at this stage of the litigation. Such determinations are reserved for the trier of fact. *Hannon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992).

In considering a motion for summary judgment, courts must "view[ ] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, the court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

The standard applicable to motions for summary judgment do not generally change if the parties file cross motions. *See, e.g.*, *Cady v. Hartford Life & Accidental Ins.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013). However, the Court must evaluate each party's motion on its own merits. *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

### III.  ANALYSIS

The parties' cross-motions for summary judgment center on whether an enforceable franchise agreement exists between Pioneer and Choice Hotels. Choice Hotels contends that the agreement was validly executed by Ms. Vaghashia, who had actual or apparent authority to bind

**MEMORANDUM DECISION AND ORDER - 7**

Pioneer, and that Pioneer ratified the agreement through its conduct.  Plaintiffs dispute each of these points and separately seek summary judgment on the narrower ground that Choice Hotels' alleged failure to provide the required FDD renders any agreement unenforceable as a matter of law.

Despite these differing theories, both motions depend on the same disputed factual issues, including whether Ms. Vaghashia executed the agreement, whether she had authority to bind Pioneer, whether Pioneer's conduct reflects acceptance of a franchise relationship, and whether the FDD was provided during the franchising process.  Because these issues involve conflicting evidence and competing inferences, they cannot be resolved as a matter of law, and neither motion may be granted.

A.      **Choice Hotels' Motion for Summary Judgment (Dkt. 47)**

Choice Hotels moves for summary judgment on the ground that the record establishes, as a matter of law, that Pioneer entered into a valid franchise agreement governing the at-issue hotel.  *See* Def.'s Mem. ISO MSJ at 3 (Dkt. 48).  Choice Hotels' argument in this respect proceeds in several steps.

First, it contends that Ms. Vaghashia executed the franchise agreement and guaranty on Pioneer's behalf though the DocuSign electronic signature platform.  *Id*.  Choice Hotels points to the fact that (i) Ms. Vaghashia executed both documents using her designated email account, with DocuSign metadata and geolocation confirming execution from a property owned by Mr. Doshi; (ii) the guaranty contained Ms. Vaghashia's Social Security Number, matching the number she had already provided in relicensing paperwork; (iii) Pioneer paid Choice Hotels a $20,000 franchise deposit from its Wells Fargo account; and (iv) Choice Hotels in turn disbursed a $20,000 incentive payment, which Pioneer accepted and retained without objection and was deposited into the same Pioneer Wells Fargo account.  *See id*. (citing Def.'s SOF Nos. 10-13

**MEMORANDUM DECISION AND ORDER - 8**

(Dkt. 49)).  Choice Hotels argues that these records demonstrate that the franchise agreement was in fact executed by Ms. Vaghashia and that Pioneer thereby became bound to its terms, including its arbitration clause.

Second, building on that premise, Choice Hotels argues that Ms. Vaghashia possessed authority to bind Pioneer to the franchise agreement.  They contend that the undisputed record shows that Ms. Vaghashia – along with Mr. Doshi – had *actual* authority to bind Pioneer. "Actual authority is that authority a principal expressly grants to an agent or impliedly confers on an agent because it is usual, necessary, and proper to achieve the object of the express authority granted to the agent." *Caballero v. Wikse*, 92 P.3d 1076, 1079 (Idaho 2004).  Choice Hotels claims that both Ms. Vaghashia and Mr. Doshi had such actual authority because they acted as Pioneer's agents in purchasing the hotel property, submitting the relicensing application where Ms. Vaghashia was identified as Pioneer's principal contact, opening and using Pioneer's bank accounts, and actually executing the franchise documents. *See* Def.'s Mem. ISO MSJ at 8-9 ("In doing so, they acted as the owners and Directors of Pioneer Hotel Group, Inc., manifesting authority to continue and formalize the very franchise relationship that gave the property its identify and market value.").  From these circumstances, Choice Hotels contends that Ms. Vaghashia had actual authority to execute the franchise agreement on Pioneer's behalf.

Alternatively, Choice Hotels argues that, even if Ms. Vaghashia lacked actual authority, she possessed *apparent* authority to bind Pioneer.  Apparent authority is created "when the principal voluntarily places an agent in such a position that a person of ordinary prudence, conversant with the business usages and the nature of the particular business, is justified in believing that the agent is acting pursuant to existing authority." *Bailey v. Ness*, 708 P.2d 900, 902-03 (Idaho 1985).  Choice Hotels maintains that Pioneer placed Ms. Vaghashia in a position where Choice Hotels reasonably believed she had authority to act for the company, emphasizing

**MEMORANDUM DECISION AND ORDER - 9**

that she and Mr. Doshi purchased the hotel property, submitted a relicensing application to continue the Quality Inn franchise and identified her as the principal contact, opened the business bank account in Pioneer's name and used that account to fund the $20,000 franchise deposit, and issued checks from a Pioneer Hotel Group account that expressly referenced the franchise agreement by its unique contract number.  *See* Def.'s Mem. ISO MSJ at 10-11 (Dkt. 48) ("These actions were not isolated or personal acts; they were corporate acts that Choice Hotels reasonably understood to reflect Pioneer's authority and assent.").  Choice Hotels argues that these representations and interactions are sufficient to justify its reliance on Ms. Vaghashia's apparent authority to execute the franchise agreement.

Third, Choice Hotels argues that, even if Ms. Vaghashia lacked authority at the time of execution, Pioneer subsequently *ratified* the franchise agreement through its conduct. "Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act as to some or all persons, is given effect as if originally authorized by him."  *Carpenter v. Payette Valley Co-op., Inc.*, 578 P.2d 1074, 1078 (Idaho 1978) (citing Restatement of Agency (Second) § 82).  Choice Hotels argues that Pioneer ratified the franchise agreement by knowingly accepting and retaining a $20,000 incentive payment, issuing a subsequent $10,000 payment referencing the franchise agreement by contract number, and continuing to operate or hold itself out as a Quality Inn.  *See* Def.'s Mem. ISO MSJ at 12-13 (Dkt. 48).  Choice Hotels insists that this course of conduct demonstrates that Pioneer, with knowledge of the material facts, affirmed and adopted the franchise agreement, thereby ratifying it as a matter of law.

    1.    Plaintiffs' Opposition to Choice Hotels' Motion (Dkt. 52)

Plaintiffs vigorously dispute these assertions.  Recognizing that "[c]ontract formation requires assent," their principal argument is that Pioneer never assented to the franchise

**MEMORANDUM DECISION AND ORDER - 10**

agreement because Ms. Vaghashia never signed it.  Pls.' Opp. to MSJ at 5 (Dkt. 52) (citing *Gray v. Tri-Way Const. Servs., Inc.*, 210 P.3d 63, 69 (Idaho 2009)).  Plaintiffs rely heavily on the testimony and analysis of their forensic expert, Rick Watts, who examined the electronic signature data associated with the DocuSign transaction.  *See id*. at 6-9.  According to Mr. Watts, the metadata associated with the electronic signatures demonstrates that it would have been impossible for Ms. Vaghashia to have signed the documents under the circumstances reflected in the records.  *See id*. at 6 ("Testimony from Rick Watts, Pioneer's expert, will conclusively prove that Vaghashia could not have signed the putative franchise agreement, and he can do so to a level of certainty comparable to a DNA mismatch in a criminal case.").  Plaintiffs contend that Mr. Watts' analysis not only shows that the signature attributed to Ms. Vaghashia could not have been placed there by her, but in fact was instead made by a Choice Hotels employee named Jim Jenkins.  *See id*. at 6-7 (citing Ex. B to Wieland Decl. (Dkt. 50-2)).  This forensic evidence, Plaintiffs submit, shows that the franchise agreement lacks the basic element of assent required to form a contract.

Plaintiffs also argue that the surrounding circumstances undermine Choice Hotels' assertion that a franchise agreement was ever executed or recognized by the parties.  They explain that Choice Hotels never treated the hotel property as an active franchise – evidenced by the absence of routine communications, inspections, or fee assessments; the lack of access to reservation, management, or payment processing systems; and the failure to list the property as a franchised Quality Inn on its website.  *See id*. at 9-11.  In Plaintiffs' view, these circumstances are inconsistent with Choice Hotels' assertion that the parties had entered into an active franchise relationship.[1]

---

[1] Plaintiffs correspondingly argue that Choice Hotels' evidence falls short of generating a genuine issue of fact as to the issue of assent.  *See* Pls.' Opp. to MSJ at 11-13 (Dkt. 52).  The

**MEMORANDUM DECISION AND ORDER - 11**

Plaintiffs further contend that factual disputes surround the above-referenced authority issues raised by Choice Hotels. Regarding actual authority, Plaintiffs argue that the record does not establish that Ms. Vaghashia had authority to bind Pioneer to a franchise agreement. They highlight how she did not purchase the hotel property (Pioneer did), how she was only a shareholder and minority owner in Pioneer, and maintain that there is no evidence that Pioneer's governing documents or internal corporate decision-making authorized her to enter into a franchise agreement on Pioneer's behalf. *See id*. at 14-16. Regarding apparent authority, Plaintiffs argue that the record does not show that Pioneer made any representations to Choice Hotels that would reasonably lead Choice Hotels to believe that Ms. Vaghashia had authority to execute a finding franchise agreement. *See id*. at 17-20.

Finally, Plaintiffs dispute Choice Hotels' ratification theory on both procedural and substantive grounds. As a threshold matter, Plaintiffs argue that ratification is an affirmative defense that Choice Hotels was required to plead, but did not, and therefore cannot rely upon at summary judgment. *See id*. at 18.[2] Even setting that issue aside, Plaintiffs contend that

---

Court is not persuaded. Although Plaintiffs attempt to explain away certain evidence cited by Choice Hotels, they at times do so in tentative terms, at one point characterizing their own explanation as "probably," before ultimately advancing their more categorical position that Choice Hotels fabricated Ms. Vaghashia's signature and that Pioneer never believed it owed any obligations under a franchise agreement. *See id*. at 12-13. Plaintiffs also do not address certain evidence relied upon by Choice Hotels, including the alleged $50,000 escrow holdback in connection with the hotel purchase. For these and other reasons discussed below, the Court cannot conclude that Plaintiffs' evidence so definitively negates assent as to entitle them to summary judgment.

[2] Choice Hotels responds that ratification is not waived under the circumstances presented here, that Plaintiffs have been on notice of its ratification theory throughout discovery, and that, in any event, they seek an amendment to their pleadings to conform to the evidence under Federal Rule of Civil Procedure 15(a)(2). *See* Def.'s Reply ISO MSJ at 4-5 (Dkt. 55). The Court need not resolve this dispute. In light of the Court's disposition of the parties' cross-motions for summary judgment – denying both based on the existence of genuine disputes of material fact – the question of whether ratification was properly pleaded does not affect the outcome at this stage of the proceedings.

**MEMORANDUM DECISION AND ORDER - 12**

ratification requires a knowing acceptance of the benefits of a contract, which is absent here. *See id*. at 18-19. Plaintiffs assert that Pioneer did not receive or retain any meaningful franchise benefits, noting that, in response to Plaintiffs' discovery requests, Choice Hotels was unable to substantiate any franchise fees or requests for payment of fees to Pioneer, requests for performance reports to Pioneer, Pioneer's use of Choice Hotels' trademarks, or Choice Hotels' public identification of the hotel property as a branded hotel. *See id*. ("Choice Hotels cannot even say with any specificity when it believes Pioneer operated a Choice Hotels brand hotel. This is because Pioneer never did so."). At bottom, Plaintiffs dispute that Pioneer ever knowingly accepted benefits or intended to affirm the franchise agreement, thus undercutting Choice Hotels' ratification theory.

2.    Assent, Authority, and Ratification Cannot Be Resolved as a Matter of Law

The parties' starkly competing narratives illustrate why the dispute cannot be resolved on summary judgment. To begin, Plaintiffs correctly note that the formation of a contract requires mutual assent to its terms. The parties dispute, however, whether Ms. Vaghashia ever executed the franchise agreement and, thus, whether Pioneer ever assented to it. Choice Hotels relies on the DocuSign certificate and related records as proof of execution and assent. In contrast, Plaintiffs, through their forensic expert, Mr. Watts, assert that the electronic signature data associated with the DocuSign transaction makes it impossible for Ms. Vaghashia to have signed the documents.[3]

---

[3] Plaintiffs have moved to strike portions of David Magnani's declaration which speak to Plaintiffs' forensic evidence from Mr. Watts. *See generally* Pls.' Mot. to Strike (Dkt. 57). Plaintiffs argue that Mr. Magnani's opinions are improper and should not be considered. *See generally* Pls.' Mem. ISO Mot. to Strike (Dkt. 57-1). The Court need not resolve the motion at this time. As discussed herein, the record presents multiple genuine disputes of material fact independent of Mr. Magnani's declaration. Because these issues preclude summary judgment regardless of whether the challenged portions of the declaration are considered, resolution of the motion would not affect the disposition of the parties' cross-motions for summary judgment.

**MEMORANDUM DECISION AND ORDER - 13**

On this record, the Court cannot determine as a matter of law whether Ms. Vaghashia did, or did not, manifest assent to the franchise agreement.  Where the existence of assent depends on competing testimony and interpretations of documentary evidence, the issue is one for trier of fact.  *See Thompson v. Pike*, 838 P.2d 293, 299 (Idaho 1992) ("A distinct understanding common to both parties is necessary in order for a contract to exist.  It is a question of fact whether mutual assent exists."); *Dornoch Holdings Int'l, LLC v. Conagra Foods Lamb Weston, Inc.*, 2012 WL 12539338, at *2 (D. Idaho 2012) ("While the issue of whether mutual assent exists is a question of fact, it may be resolved on summary judgment if there are no genuine issues of material fact.  Moreover, the Court may determine whether mutual assent existed as a matter of law where reasonable minds could reach but one conclusion.") (internal quotation marks and citations omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (courts may not resolve credibility disputes or weigh evidence at the summary judgment stage).

The same is true for the related questions of authority and ratification.  Whether an agent has authority to bind a principal, and similarly, whether a principal subsequently ratifies an agent's unauthorized conduct, are normally questions of fact for the jury unless the underlying evidence is undisputed.  *See, e.g.*, *Jones v. HealthSouth Treasure Valley Hosp.*, 206 P.3d 473, 479-80 (Idaho 2009); *Clearwater Const. & Eng'g, Inc. v. Wickes Forest Indus.*, 697 P.2d 1146, 1149 (Idaho 1985).  Here, Choice Hotels contends that Ms. Vaghashia had authority to bind Pioneer and that, even if not, Pioneer later ratified the franchise agreement by knowingly accepting its benefits.  Plaintiffs dispute both propositions.  Again, the record is disputed; it reflects conflicting evidence on each issue, including the nature and scope of Ms. Vaghashia's authority and whether Pioneer's conduct demonstrates knowing acceptance of a franchise

---

The Court therefore declines to reach the merits of Plaintiffs' Motion to Strike at this time and denies it without prejudice to renewal, if appropriate, at a later stage of the proceedings.

**MEMORANDUM DECISION AND ORDER - 14**

relationship.  Because resolution of these questions depends on disputed facts, credibility

determinations, and competing inferences, the Court cannot resolve them as a matter of law.

Accordingly, Choice Hotels has not shown the absence of genuine disputes of material fact, and

its Motion for Summary Judgment must be denied.

**B.      Plaintiffs' Motion for Summary Judgment (Dkt. 50)**

Plaintiffs' Motion for Summary Judgment proceeds on a narrower legal theory, but raises

issues that overlap with those presented in Choice Hotels' motion.  Plaintiffs argue that, even

assuming the existence of a franchise agreement, Choice Hotels violated federal franchise

regulations – and, by extension, the Idaho Consumer Protection Act ("ICPA") – by failing to

provide the required FDD prior to execution of the alleged franchise agreement.  *See* Pls.' Mem.

ISO MSJ at 5-8 (Dkt. 50-1).  Plaintiffs maintain that there is no evidence an FDD was ever

delivered.  They point to Ms. Vaghashia's testimony denying receipt, the absence of any

produced FDD in discovery, and their expert, Mr. Watts' conclusion that the purported

acknowledgement forms could not have been signed by her.  *See id*. at 2-4.  Plaintiffs relatedly

contend that Choice Hotels separately violated those same regulatory requirements by

misrepresenting that Pioneer was a franchisee.  *See id*. at 6-7.  According to Plaintiffs, each of

these violations independently renders any purported franchise agreement legally void and

unenforceable.  *See id*. at 7.

1.      Choice Hotels' Opposition to Plaintiffs' Motion (Dkt. 53)

Choice Hotels unsurprisingly responds that Plaintiffs' motion rests on a faulty factual

premise.  Specifically, it contends that it transmitted the FDD to Ms. Vaghashia months before

she signed the franchise agreement, attaching the full FDD and instructions regarding its

execution.  *See* Def.'s Opp. to MSJ at 6 (Dkt. 53).  Choice Hotels also relies on the same

DocuSign records and acknowledgment forms at issue elsewhere in the case as evidence that

**MEMORANDUM DECISION AND ORDER - 15**

Pioneer received the FDD and confirmed its receipt in writing. *See id*.  In addition, Choice Hotels argues that Plaintiffs cannot invoke the protections of the ICPA while simultaneously denying the existence of any contractual relationship, as standing under the statute requires such a relationship. *See id*. at 7 ("Plaintiffs cannot have it both ways: they cannot deny the existence of a contract with Choice Hotels while simultaneously invoking the protections of a statute that presumes such a relationship.  This contradiction alone forecloses summary judgment under the ICPA.").  But even assuming the existence of a disclosure deficiency, Choice Hotels repeats its belief that Pioneer ratified the franchise agreement through its conduct, highlighting the same circumstances referenced in support of its own Motion for Summary Judgment. *See id*. at 10-11.

  2.  Transmission of the FDD Cannot be Resolved as a Matter of Law

In the end, Plaintiffs have not demonstrated that they are entitled to summary judgment on this record.  Whether Choice Hotels provided an FDD is itself a disputed factual question that cannot be resolved as a matter of law.  That inquiry is not limited to the authenticity of the acknowledgement forms, but also includes whether the FDD was transmitted, received, or otherwise made available to Pioneer during any franchising process.  Those questions are intertwined with the broader disputes identified above – namely, the reliability of the DocuSign records, the credibility of the parties' competing accounts, and the nature of the parties' relationship during the relevant time period.  As with Choice Hotels' Motion for Summary Judgment, the record reflects numerous factual disputes, including whether Ms. Vaghashia executed the relevant documents, whether she had authority to bind Pioneer, whether Pioneer ever operated as a franchise, and whether Pioneer ratified any agreement through its conduct.  Because these issues involve conflicting evidence, competing inferences, and credibility determinations, they must be resolved by the factfinder.  Accordingly, Plaintiffs' are not entitled to summary judgment either.

**MEMORANDUM DECISION AND ORDER - 16**

## IV. <u>ORDER</u>

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  Defendant's Motion for Summary Judgment (Dkt. 47) is DENIED;

2.  Plaintiffs' Motion for Summary Judgment (Dkt. 50) is DENIED; and

3.  Plaintiffs' Motion to Strike David Magnani Declaration (Dkt. 57) is DENIED,

WITHOUT PREJUDICE.



DATED:  March 23, 2026

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge